IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BARKLEY, INC. | ) | |
| | ) | |
|    Plaintiff and Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action Number |
| | ) | 13-01013-CV-W-JTM |
| GABRIEL BROTHERS, INC. and | ) | |
| RUGGED WEARHOUSE, INC., | ) | |
| | ) | |
|    Defendants and Counterclaimants. | ) | |

# ORDER

On October 5, 2012, Gabriel Brothers, Inc. ("Gabriel Brothers") entered into a seven-page Master Services Agreement ("MSA") with Barkley, Inc. ("Barkley"). Pursuant to the MSA, Barkley agreed to provide certain marketing and advertising services to Gabriel Brothers (and its affiliated company, Rugged Wearhouse, Inc.) on a project-by-project basis. The MSA provided that all services to be covered by the agreement had to "be designated in a written Statement of Work"[1] that had to contain the following specific language:

> This Statement of Work is incorporated into, and made a part of, that certain Master Services Agreement ("Agreement") between the parties dated Oct. 5, 2012, which Agreement governs the relationship of the parties. All terms and conditions provided in the Agreement shall apply to this Statement of Work.

The MSA further provided two situations whereby Gabriel Brothers would compensate Barkley:

(1) in consideration for services on a project, Gabriel Brothers would "pay Barkley those fees agreed to by the parties and designated in a project's Statement of Work," and

---

[1] The use of statements of work is common in the advertising industry and such documents are utilized to avoid confusion and uncertainty regarding the scope of work to be performed and the amount that will be paid for such work.

(2) Gabriel Brothers would reimburse Barkley "for all reasonable out-of-pocket expenses pursuant to [an agreed upon explanation of terms] so long as such expenses are pre-approved in advance by [Gabriel Brothers] in writing."

In addition, the MSA provided that either Barkley or Gabriel Brothers could terminate the MSA with 90 days written notice." Such a termination would not affect previously agreed upon projects "then in effect."

The business relationship between Barkley and Gabriel Brothers was short-lived and has led to the current needlessly contentious litigation before the Court. Specifically, the litigation was instituted by Barkley on September 4, 2013, when Barkley sued Gabriel Brothers (and Rugged Wearhouse, Inc.) in three counts: (1) an alleged breach of the MSA, (2) breach of an alleged agreement between the parties on April 5, 2013, and (3) unjust enrichment. In response, Gabriel Brothers (and Rugged Wearhouse, Inc.) counterclaimed asserting claims against Barkley for (1) breach of the MSA, and (2) unjust enrichment.

With discovery concluded and a trial date approaching, Gabriel has filed a motion with the Court seeking a summary judgment against Barkley on Barkley's claims for breach of the MSA and breach of the alleged agreement of April 5, 2013. In addition, Gabriel Brothers seeks a partial summary judgment in its favor on its counterclaim against Barkley for breach of the MSA. The Court grants in part and denies in part the pending motion.

With regard to Barkley's claim against Gabriel Brothers for breach of the MSA, the dispute centers on the parties' dealings in the first quarter of 2013.[2] Barkley contends that the parties agreed to a Statement of Work "from January 2013 forward"[3] and that Gabriel Brothers

---

[2] The parties had previously entered into an agreed Statement of Work for the fourth quarter of 2012.

[3] On March 26, 2013, Gabriel Brothers, in writing, informed Barkley that it was terminating the MSA.

2

has not paid the monthly fee of $58,333 per month due on this Statement of Work. Gabriel Brothers asserts that there was no such agreed upon Statement of Work under the MSA obligating it to make such payments to Barkley. The Court agrees.

Barkley argues that an agreed upon Statement of Work between the parties was finalized on February 21, 2013. Prior to that date, there were several exchanges between the parties regarding a potential Statement of Work. Ultimately, on February 13, 2013, Barkley wrote to Gabriel Brothers:

> With proposal, the fee will drop to 58,333.33 per month (Feb–Dec). [] We have tightened our fees to work with your budget, and feel we can accomplish this with a disciplined approach to the pre-scheduled events. We would like to set up a call to walk through the attachment together and get our agreement finalized.

Thereafter, on February 21, 2013, Barkley sent Gabriel Brothers an email with an "updated budget document" attached. The attachment was labeled as "Statement of Work." After further discussions between the parties, Barkley made further revisions to its proposed Statement of Work and emailed it to Gabriel Brothers on March 1, 2013, with the note:

> If you feel good about this, we will get a contract drafted so we can get this finalized and keep moving on our events.

However, the parties continued negotiations and, after Gabriel Brothers asked for additional work to be included, on March 8, 2013, Barkley made further changes, including increasing the proposed monthly fee to $60,000. Barkley indicated that if the revisions were acceptable then it would "send over the final paper work to be signed." The email concluded:

> Please let me know if you have any questions on these changes. I am hopeful we can get this approved soon. I am starting to draft the contract now based on this latest agreement. Once it is finished, we will send it over to you for final approval.

3

Gabriel Brothers did not approve the proposed Statement of Work and, as previously noted, terminated the MSA in writing on March 19, 2013.

In Count I of its petition, Barkley contends that, pursuant to the MSA, Gabriel Brothers owes it "the $58,333 monthly fee for February, and March (while work was continuing to be performed) and for April, May, and June (the 90 day notice and transition period)."[4] As per the terms of the MSA, however, Gabriel Brothers would be obligated to pay the aforementioned monthly fees only if "those fees [had been] agreed to by the parties and designated in a project's Statement of Work." The Court concludes that the parties did not have a meeting of the minds on any Statement of Work for the first quarter of 2013 and the parties did not enter into a binding, enforceable Statement of Work for that time period that met the strict but unambiguous requirements of the MSA – an MSA that was freely entered into by these two sophisticated and knowledgeable business entities.

In Count II of its petition, Barkley contends that, following the termination of the MSA by Gabriel Brothers, the parties reached an alternative contractual arrangement that Gabriel Brothers subsequently breached. Following the termination, the parties entered into negotiations on a separation agreement. According to Barkley, an oral agreement was reached on April 5, 2013, whereby:

> [Gabriel Brothers] rather than paying the January [2013] Invoice and the monthly retainer for February, March 2013 plus the 90 day notice period under the 2013 Statement of Work [would] pay Barkley for the actual hours worked on various projects for [Gabriel Brothers].

It is undisputed that on or about April 5, 2013, Barkley sent to Gabriel Brothers several third-party invoices as well as invoices for work actually done for Gabriel Brothers in February and

---

[4] The petition also references some 2012 charges and a January 2013 invoice but indicates that Gabriel Brothers has paid those amounts.

March of 2013. Gabriel Brothers paid the third party vendors directly. However, Gabriel Brothers questioned some of the invoices for Barkley's work and paid Barkley only $228,677.13 of the $366,900.65 that Barkley claimed it was owed. Barkley seeks the remaining balance alleging that Gabriel Brothers breached the April 5 oral agreement.

It does appear to be beyond dispute that the parties were working on an agreement to resolve their differences and that the agreement would entail Gabriel Brothers paying Barkley for "actual costs."[5] Gabriel Brothers believes that it has paid such actual costs by paying all third-party invoices and by paying those parts of Barkley's invoices that adequately reflected work done for Gabriel Brothers.[6] Barkley, on the other hand, believes that the payment of anything less than 100% of its invoiced amount is a failure to pay actual costs. The resolution of such a contract dispute is resolved by examining the agreed upon terms of the underlying contract. Unfortunately, in this case, there is no clearly defined contract.

An action for breach of contract requires a plaintiff to demonstrate: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Missouri Military Academy,* 304 S.W.3d 98, 104 (Mo. 2010) (*en banc*). It is axiomatic that "[t]he existence of a contract necessitates a 'meeting of the minds' which the court determines by looking to the intention of the parties as expressed or manifested

---

[5] This is the phrase used by Gabriel Brothers' CEO Ken Seipel in an April 16, 2013 email to other Gabriel Brothers' employees regarding his phone discussion with Barkley's CEO Daniel Fromm. The email [Doc. 80, Exhibit 16] states: "Dan [Fromm] and I have agreed we are paying for actual costs versus the monthly fee and he will waive the cancellation fees on the back side. Deposition testimony of Daniel Fromm [Doc. 71, Exhibit A at 190, 195-196.] corroborates this conversation and agreement.

[6] After reviewing the Barley invoices, Gabriel Brothers noted repeated invoicing for general services not related to an approved project and some charges with no explanation of the work performed.

5

in their words or acts." *J.H. v. Brown,* 331 S.W.3d 692, 701–02 (Mo. App. [W.D.] 2011). The essential terms of the contract must be capable of certain interpretation. *Ketcherside v. McLane,* 118 S.W.3d 631 636 (Mo. App. [S.D.] 2003). "That is, [the] terms of agreement must be sufficiently definite to enable the court to give it an exact meaning." *Id.* At issue here is whether the parties have "a mutuality of assent or a meeting of the minds on the essential terms of a contract." *Id.*

In this case, whether there was a meeting of the minds on the essential elements of a separation agreement is a close call. However, the Court is mindful:

> Determination that an agreement is sufficiently definite is favored in the courts, so as to carry out the reasonable intention of the parties if it can be ascertained. A contract is sufficiently definite if it contains matter which would enable the court under proper rules of construction to ascertain its terms, including consideration of the general circumstances of the parties and if necessary relevant extrinsic evidence.

*Property Assessment Review, Inc. v. Greater Missouri Builders, Inc.*, 260 S.W.3d 841, 846 (Mo. App. [E.D.] 2008). In this case, there was an agreement that Gabriel Brothers would pay Barkley's "actual costs." Keeping in mind that every agreement is overlain with implied duties of good faith and fair dealing, the Court concludes that there is a legitimate jury question as to the exact amount of what Barkley's "actual costs" were, and whether Gabriel Brothers' partial payment covered such costs (*i.e.*, whether Gabriel Brothers in fact breached any agreement to pay actual costs).

With regard to Gabriel Brothers' motion for partial summary judgment on its own counterclaims, the Court denies the motion. The rationale for the motion largely depends on the Court accepting Gabriel Brothers' argument that Barkley has admitted crucial matters because it did not file a response to Gabriel Brothers' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES,

AND COUNTERCLAIM [Doc. 21]. It is correct that FED. R. CIV. P. 8 provides that "[a]n allegation – other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." It is also true that a counterclaim is an allegation requiring a responsive pleading.

However, in this case, Barkley did respond to the counterclaim when it was first raised in Gabriel Brothers' original answer. The counterclaim in the amended answer is seemingly identical to the first pleading. To that end, "[t]he failure to respond to an amended [pleading does] not result in admissions under Rule 8(d) . . . when the answer to the original [pleading] had the effect of denying the crucial allegations in the amended pleading." WRIGHT, MILLER, *ET AL.*, FEDERAL PRACTICE AND PROCEDURE § 1279. *See also Stanley Works v. Snydergeneral Corp.*, 781 F.Supp. 659, 664-65 (E.D.Cal. 1990) ("From the court's research, the option to file an Answer to a First Amended Complaint lies with the defendant. . . [and the] defendant can do so if the First Amended Complaint makes allegations that change the theory or scope of the case"). As summarized by another court:

> [C]ase law exists for the proposition that an answer to the original complaint may also suffice as an answer to an amended complaint. That proposition appears to be limited to instances in which a defendant seeks to rely upon an affirmative defense asserted in its answer to the complaint but not in an answer to an amended complaint or in which the averments of the amended complaint are substantially similar to averments in the original complaint and, therefore, a denial in the answer to the original complaint suffices as a denial to a substantially similar averment in the amended complaint

*Whittaker v. Morgan State University*, 2011 WL 4072193, op. at 2 (D.Md. Sept. 12, 2011). Given this law, and in light of the fact that Gabriel Brothers never sought nor was granted leave to file its FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

7

in the first instance, the Court will not deem Barkley to have admitted the allegations contained in the latter filed pleading.

Finally, the Court briefly addresses three additional motions pending in this case. First is Gabriel Brothers' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT SAM MEERS PURSUANT TO FEDERAL RULE OF EVIDENCE 702 [Doc. 52]. At the present time, the motion is denied. While it is clear to the Court that the parameters of Mr. Meers should be stricter than those set forth in his expert report, the Court will consider objections to Mr. Meers' testimony at trial and (if necessary) hear portions of his testimony initially outside the hearing of the jury. The next motion, Barkley's MOTION TO ENFORCE JUDICIAL ADMISSION [Doc. 67] strikes the court as odd, at best. The statement in paragraph 13 of Gabriel Brothers' FIRST AMENDED ANSWER[7] speaks for itself and is subject to evaluation and consideration by the fact finder in addition to any other evidence presented. Finally, Barkley's MOTION FOR SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSE OF ACCORD AND SATISFACTION [Doc. 54] is denied. The statement of Barkley's in-house counsel that the payment received from Gabriel Brothers was not an accord and satisfaction and the mere response of Gabriel Brothers' in-house counsel's "I understand,"

---

[7] Paragraph 13 of the FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM OF GABRIEL BROTHERS, INC. AND RUGGED WEARHOUSE, INC., [Doc 21] reads as follows:

> After the issuance of the January Invoice, the parties agreed upon the terms of the 2013 Statement of Work for a monthly fee of $58,333 from February 2013 forward, with the January Invoice being due and payable.
>
> ANSWER: Gabriel Brothers and Rugged Wearhouse admit that they agreed to a monthly fee of $58,333 from February 2013 forward after the issuance of the January Invoice. Gabriel Brothers and Rugged Wearhouse lack sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in Paragraph 13 and, therefore, deny the same.

8

do not establish that there are no genuine issues of material facts regarding accord and satisfaction.

Accordingly, in light of the foregoing discussion, it is

ORDERED that the MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT SAM MEERS PURSUANT TO FEDERAL RULE OF EVIDENCE 702 [Doc 52] is **DENIED** at this time, subject to further consideration at trial. It is further

**ORDERED** that Barkley's MOTION FOR SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSE OF ACCORD AND SATISFACTION [Doc. 54] is **DENIED**. It is further

**ORDERED** that Barkley's MOTION TO ENFORCE JUDICIAL ADMISSION [Doc. 67] is **DENIED**. It is further

**ORDERED** that DEFENDANTS AND COUNTER-CLAIMANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [Doc 70] is **GRANTED** with regard to Barkley's claims for breach of the parties' Master Service Agreement (Count 1) but **DENIED** in all other respects.

*/s/ John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**